## AUSTIN et al. v. GRISSOM–ROBERTSON STORES, Inc.

### No. 732.

Court of Civil Appeals of Texas. Eastland.
Oct. 17, 1930.

Rehearing Denied Nov. 14, 1930.

Beall & Beall, of Sweetwater, and Thomas & Coffee, of Big Spring, for appellants.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

FUNDERBURK, J.

Grissom-Robertson Stores, Inc., brought this suit in the district court of Taylor county against Bob Austin and B. O. Jones, both residents of Howard county. By the suit plaintiff sought judgment for damages for fraud. The fraud alleged consisted of an affirmative act committed in Howard county; there being also other allegations as to false representations and fraudulent concealment. The defendants each filed pleas of privilege, which, being duly controverted, were upon hearing overruled. The defendants have appealed.

We do not deem it necessary to take separate notice of all the five different propositions which appellants urge for a reversal of the judgment. It is sufficient to say that ap-

pellants raise the questions that the evidence does not show that any of the alleged fraud was committed in Taylor county, and that, in any event, there was no evidence to show that plaintiff relied upon the alleged false representations.

Venue was sought to be maintained in Taylor county under R. S. 1925, art. 1995, subd. 7, providing: "In all cases of fraud * * * suit may be brought in the county in which the fraud was committed. * * *" In order to constitute "cases of fraud" under this statute, it is necessary that fraud be a part, at least, of the cause of action. It is not sufficient that the evidence which may be offered to support the cause of action may disclose the existence of some fraudulent conduct. Sheffield v. Rousey (Tex. Civ. App.) 153 S. W. 653; Slaughter v. Oakes (Tex. Civ. App.) 203 S. W. 405; First National Bank v. Gates (Tex. Civ. App.) 213 S. W. 720; Latshaw v. McLean (Tex. Civ. App.) 238 S. W. 1003.

It is also necessary that the facts claimed to constitute fraud be alleged in plaintiff's controverting plea. It follows, as a necessary corollary, from these two propositions, that the acts or omissions alleged as fraud in the controverting plea must be the same acts or omissions, in part at least, as those which the plaintiff by his petition asserts as his cause of action. It has been held to be permissible for plaintiff, in his controverting plea, to refer to and make his petition a part of same. Where this is done, if the controverting plea proper should allege acts or omissions as fraud which are not alleged in the petition, they should be disregarded, unless in such conflict with the allegations of the petition as to render the plea subject to general exception. The proof upon the issue of venue should be confined to the acts or omissions which are common to both controverting plea and the plaintiff's petition. In the present case the controverting plea, while expressly referring to the petition, does not expressly adopt same as a part thereof. Appellee construes the plea to make the petition a part thereof, and appellants do not appear to contest the correctness of that construction. Without deciding the point we shall simply assume that the petition is a part of the controverting plea, and upon that basis pass to a consideration of the real questions presented.

It is necessary to determine in the first place what acts or omissions constituting a part of plaintiff's cause of action and claimed to constitute fraud are alleged to have been committed in Taylor county. All other acts or omissions are immaterial to the present inquiry. For instance, plaintiff's petition alleges the following: " * * * That just before the inventory was taken, the sum of $15,000.00 worth of worthless goods, wares and

merchandise, being the culled and unsalable and racket goods, out of another store in the town of Big Spring owned by the defendants, were transferred into the Douglas store and placed in the shelves in said store to swell said inventory and for the purpose of cheating and defrauding the plaintiff herein. That the transfer of said goods, wares and merchandise was intended to defraud," etc. But this, for the purpose of fixing venue in Taylor county, is completely eliminated by the immediately succeeding clause, "and was done at Big Spring in Howard County, Texas." Again the petition alleges that, at the time a certain option was given the plaintiff to purchase the stock of goods and fixtures, excluding certain goods, the defendants represented "that all the remaining goods were practically new and up to date, and standard merchandise, and that they were selling and only selling to the plaintiff the goods, wares and merchandise in the Douglas building in Big Spring, Texas, after excluding the merchandise set forth in the contract." But these allegations can form no part of a cause of action for fraud because of the further allegations to the effect that, after "a very careful examination of same," plaintiff "found that the goods, wares and merchandise located in said Douglas building, with the exception of the goods to be excluded, were standard goods, wares and merchandise and practically new, and upon the faith of the actual goods in the store and exhibited to plaintiff, the contract and option above set forth were executed."

It is deemed advisable to notice particularly the following allegations of plaintiff's petition. It was alleged that, prior to plaintiff's taking over the stock of goods, "an inventory was made of said goods, wares and merchandise by the defendants herein, and the inventory * * * exceeded $46,000.00 and amounted to approximately $66,100.00." Then follow allegations to the effect that the terms of the contract only required plaintiff to take over the sum of $46,000 of said goods, wares, and merchandise, and only required them to take over such goods, wares, and merchandise that were in the store in Big Spring at the time said contract was entered into, and that the plaintiff was willing and prepared, and was ready, to pay the said $46,000 and to take over the goods which it had contracted to buy and agreed to buy, and which were in the store at the time of the execution of the contract and option. Just here it may be well to interpolate the observation that, according to plaintiff's own allegations, the original contract was completely performed by all parties, free from any taint of fraud. That contract only obligated plaintiff to take $46,000 worth of the stock. It did not contemplate that all the stock would be taken. An actual inspection by plaintiff had disclosed the presence of at least $46,000 of stock of the kind and

character contracted for. It was therefore wholly immaterial that the final inventory showed more than $46,000 of stock, as was also the amount of the excess or quality of the goods comprising such excess. These observations are made just here to better point out what presently appears; namely, that the fraud, if any, involved in the case, relates exclusively to a subsequent new contract or modification of the first contract made after the aforementioned inventory was taken. The subject-matter of this new agreement was the sale by defendants to plaintiff of the excess over $46,000 worth of the stock of goods covered by the inventory.

Going back now to the allegations of the petition, and supplementing the portion last quoted, it is alleged: "And thereupon the defendants came to the city of Abilene, Texas, where the plaintiff resides, and falsely and fraudulently represented * * * to the plaintiff herein that the inventory of said store (meaning inventory of the goods, wares and merchandise covered by said contract and theretofore shown to the plaintiff), was far in excess of $46,000.00 and was approximately $66,100.00, which representations so made in the city of Abilene, Taylor County, Texas, were false and fraudulent and known to be fraudulent by said Austin and Jones at the time they were so made, and the said Austin and Jones knew that the plaintiff did not know of the falsity of said representations and of the fraudulent inventory." It is necessary carefully to analyze the foregoing quotation in order to understand just what were the misrepresentations claimed to have been made. It is certain plaintiff did not intend thus to charge that the inventory was false in showing $66,100 of goods, because there almost immediately follows the admission that, "as a matter of fact, the goods actually in said store at the time the inventory was made in June, 1929, were approximately $66,000.00," etc. It is equally as clear that the language cannot properly be construed to charge false representations that the goods inventoried were only those covered by the contract, because, as already said, the only contract then in existence required plaintiff to take but $46,000 worth of the total stock and contemplated the possibility of there being an excess. Just what wrong consisting of representations that plaintiff, by this language, sought to charge against the defendants, would, we think, be wholly incomprehensible, except as we may be enlightened by the allegations hereinbefore quoted, charging a fraudulent transfer of old goods into the stock between the time when plaintiff inspected the stock and the time of taking the inventory. Aided by that averment, the only meaning that can be given to the allegations is that same seeks to charge that defendants falsely represented that all the goods covered by the inventory were the same as were in the store at the time when plaintiff made its inspection, or (which is perhaps the same thing differently stated) that they were the same goods as had previously been shown to the plaintiff. Said allegations, as thus constructed, must be looked to alone as constituting the fraud claimed to have been committed in Taylor county.

It is true, there is the further allegation that the defendants "also fraudulently and falsely, with intent to defraud, concealed from plaintiff that some $20,000.00 or $25,000.00 worth of merchandise had been placed in the stock delivered to it." But such allegations, aside from being a mere conclusion, there being no averment of any facts showing a concealment, do not purport to allege that the concealment was done in Taylor county. To save recurring later to this particular matter, we will just here state that there was no pretense of any evidence of a concealment, particularly in Taylor county, unless the bare fact that the defendants in Taylor county omitted to inform the plaintiff that they had fraudulently transferred the old stock into the new be a concealment. Concealment in that sense would not constitute any part of the cause of action involved in the suit. The alleged wrong sought to be redressed was a fraudulent transfer of the goods which plaintiff expressly recognizes was committed in Howard county. It would be treating too lightly, we think, the legal right of a defendant to be sued in the county of his residence, subject only to the exceptions provided in the statute, were we to hold that, upon charges of gross fraud committed in the county of defendant's residence, he could be held to answer in another county simply because, while in such other county, he did not volunteer the information that he had committed the fraud. It would require a very strained construction of said subdivision 7 to make it applicable to such a state of facts. As said by Judge Williams in Lasater v. Waits, 95 Tex. 553, 68 S. W. 500: "The defendant is not to be denied the privilege of being sued where he resides, upon a strained or doubtful construction of the exceptional provision."

Looking only to the representations claimed to have been made in Taylor county, we are next met with a question as to whether the controverting plea charges the same misrepresentations as does the plaintiff's petition. The representations alleged in the controverting affidavit to have been made by the defendants are "that the goods plaintiff was buying were the same goods that had theretofore been shown to plaintiff, and which were the goods which had been contracted for." It would seem then that only one of the two possible things which we have construed the petition to mean is relied on in the controverting plea. We will not stop to inquire whether plaintiff was thus bound by its

own construction of an ambiguous pleading. In any and all events the question for decision is boiled down to this: Was there any evidence to show either or both of the following things: (1) Did the defendants in Taylor county represent to plaintiff that all the goods covered by the inventory were the same goods that were in the store at the time they were inspected by plaintiff? (2) Did the defendants in Taylor county represent to plaintiff that all the goods covered by the inventory were the same that had theretofore been shown to the plaintiff? The only evidence which we have been able to find in the entire statement of facts that seems to have any bearing on the matter whatever is a portion of the testimony of E. H. Robertson, which we quote, as follows:

"You ask me to state Mr. Austin's language, what he told me that I say was fraud; just what he said here, and I answer the day that we made the deal, of course, we knew it was new merchandise. When he came to settle up, he had too much merchandise, by several thousand dollars. We told him that we could not handle that much merchandise in Big Spring. In order to reduce the stock there is always a loss. You cannot sell excess merchandise without taking a loss. So he protested very much on discounting that, *for the reason that it was good, clean, new merchandise, and it was worth one hundred cents on the dollar*. (Italics ours.) And if it had been as good merchandise as the other merchandise in the store, it would have been that class of merchandise. That is what he told us, and of course we had no idea that there was any old merchandise in it. *He said he could not take a discount on that merchandise, because it was good, clean merchandise, and he could not take a discount on it*. (Italics ours.) We insisted on a discount, if we bought it, and we did discount it when we bought it."

■ All the representations which the witness testified to are the portions in italics. These occurred in the negotiations which finally resulted in plaintiff purchasing the excess over $46,000 of the stock covered by the inventory. Obviously, the representations failed to accomplish the purpose for which they were made; namely, to avoid taking a discount. But the all-important fact that appears from the testimony is that it does not prove the representations alleged. Proof that the defendant stated that he could not take a discount on the merchandise because it was good clean merchandise, and worth one hundred cents on the dollar, certainly is no proof that he represented that the merchandise covered by the inventory was the same as he had shown the plaintiff, nor that it was all in the building at the time plaintiff inspected the stock. Plaintiff, relying upon a representation as being fraudulent, was under the necessity of proving, in substance at least, that the representation alleged, and not some other, was made.

■■ In addition to what has been said, false representations, in order to constitute fraud, must be relied on. The proof of such fraud, in order to maintain venue in Taylor county and justify the overruling of the plea of privilege, would have to include some evidence that plaintiff relied upon the representations. The record is wholly lacking in any evidence to show such reliance. The evidence shows conclusively that the inventory in question was made by the agents of plaintiff and not by the defendants, as plaintiff alleged. The representations that the merchandise was new were but an argument against allowing a discount upon goods in excess of those covered by the then existing contract. Clearly they were not relied upon for the only purpose for which they purported to have been made; namely, to avoid a discount. The whole record is not only silent as to facts to show a reliance upon the alleged misrepresentations, but almost, if not quite, conclusively excludes the existence of such reliance.

We are therefore of opinion that the court erred in overruling the plea of privilege, for which reason the judgment should be reversed, and that the cause should be transferred to Howard county for trial, and it is accordingly so ordered.